# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPORT TRINITY LLC,<br><br>      Petitioner,<br><br> v.<br><br>BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>      Respondents. | Case No. 1:18-mc-355<br><br>[Underlying Case:<br>USDC Central District of California<br>Case No. 2:18-cv-02421-JFW-E] |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA AND/OR FOR PROTECTIVE ORDER, AND FOR TRANSFER UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(f)

Pursuant to Federal Rules of Civil Procedure 26 and 45, Non-Party and Petitioner Sport Trinity LLC ("Petitioner"), respectfully submits this memorandum in support of its motion to quash the subpoena for documents directed to AT&T Mobility LLC ("AT&T") by Respondents Broidy Capital Management LLC and Elliott Broidy ("Respondents") in connection with the civil action pending in the Central District of California (the "California Court") captioned *Broidy Capital Management LLC et al. v. State of Qatar et al*, No. 18-cv-02421-JFW-E (the "Subpoena"). In the alternative, Petitioner respectfully requests that the Court issue a protective order limiting the scope of the Subpoena as set forth further below. Finally, Petitioner requests transfer of the instant motion to the California Court for consideration, as permitted under Federal Rule of Civil Procedure 45(f). AT&T consents to such transfer, and the principals of judicial economy and equity to the impacted party, Petitioner, favor such a transfer.

## PRELIMINARY STATEMENT

Respondents' subpoena to AT&T seeks unfettered access to Petitioner's call, text, and SMS history for a period exceeding a year. The subpoena must be quashed on multiple grounds. First, the Subpoena seeks content which cannot be disclosed pursuant to California Public Utilities Code Section 2891 without Petitioner's consent. Petitioner has not provided such consent. Second, Respondents have made no effort to limit their requests to communications relevant to the *Broidy* Litigation, rendering the Subpoena overbroad and a violation of Petitioner's privacy interests, among other legitimate interests.

In an effort to avoid court intervention, Petitioner offered to overlook its CPUC objection if Respondents would agree to limit the scope of the information sought to those communications relevant to the *Broidy* litigation. Petitioner offered three proposals for how the Respondents could limit their requests, all of which Respondents rejected. Instead, Respondents argued that Rule 26's relevancy standard does not apply to the Subpoena and they are entitled to all of the records they seek, notwithstanding Petitioner's privacy and other legitimate interests. Because neither the rules nor the principles of equity support such a position, Petitioner requests that the Court either quash the subpoena in its entirety or issue a protective order to limit the scope of the information sought to that which is relevant to the *Broidy* Litigation. Petitioner further requests that the Court transfer this Motion to the Central District of California.

## RELEVANT PROCEDURAL HISTORY

On March 26, 2018, Respondents filed the *Broidy* Litigation. (See *Broidy Capital Management LLC et al. v. State of Qatar et al*, No. 18-cv-02421-JFW-E (C.D. Cal.) (the "*Broidy* Litigation"), ECF No. 1.) On May 24, 2018, Respondents amended the complaint. (*Id.*, ECF No. 47.) Numerous Defendants, including the State of Qatar, have filed motions to dismiss (*Id.*,

ECF. No. 81, 112), and the State of Qatar has also filed a motion to stay discovery (*Id.*, ECF No. 80). The motions to dismiss are either in the midst of briefing or have been taken under submission by the Court. (*Id.*, ECF No. 178.) The Court has also taken the State of Qatar's motion to stay discovery under submission. (*Id.*, ECF No. 178.)

On July 11, 2018, Ayman Sabi, a principal of Petitioner, received a letter from AT&T Mobility LLC ("AT&T") at the residence where AT&T sends its bills for the subject account, indicating that it had received the Subpoena and planned to respond to the Subpoena on July 16, 2018, barring any objection. (Decl. of Ayman Sabi ("Sabi Decl.") ¶ 6, Ex. A.)

The AT&T Subpoena contains the following document requests for the phone number (310) 554-3646, which is registered to Petitioner.

- Document Request No. 1: Documents sufficient to identify the names and addresses of the subscriber or subscribers identified by the Phone Number from May 1, 2017 to the present.

- Document Request No. 2: Call logs or documents reflecting the telephone numbers called and received concerning the use of the Phone Number from May 1, 2017 to the present.

- Document Request No. 3: Text Message or SMS logs or documents reflecting records of transmission of text or SMS messages sent and received concerning the use of the Phone Number from May 1, 2017 to the present. (*Id.*)

On July 12, 2018, Petitioner notified AT&T by both phone and letter that it objected to the Subpoena and requested that AT&T take no further action in response to the Subpoena until Petitioner had an opportunity to communicate its concerns to Respondents. (Decl. of Amanda Fitzsimmons ("Fitzsimmons Decl.") Decl. ¶ 2, Ex. A.) Since that time, counsel for Petitioner has

participated in two phone calls with counsel for Respondents and exchanged multiple emails regarding the Subpoena and its scope. (*Id.* at ¶ 3.) On July 30, 2018, the parties reached an impasse in their discussions, necessitating the filing of this motion. (*Id.* at ¶ 4.) This motion is properly brought in this Court because it is the "court for the district where compliance is required." Rule 45(d)(3)(A). *See also KGK Jewelry LLC v. ESDNetwork*, No. 1:11-cv-09236, 2014 WL 1199326, *3 (S.D.N.Y. Mar. 24, 2014) ("Jurisdiction over a motion to quash or modify . . . remains with 'the court for the district where compliance is required.'" (quoting Rule 45(d)(3))).

## LEGAL STANDARD

### A. Motions to Quash

The Federal Rules of Civil Procedure permit parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of initially showing relevance. *United States v. McGraw-Hill Cos.*, No. CV 13-779, 2014 U.S. Dist. LEXIS 59408, at *23 (C.D. Cal. Apr. 15, 2014).

The Court has broad discretion to "limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *K.C.R. v. Cnty. of L.A.*, No. CV 13-3806, 2014 U.S. Dist. LEXIS 98279, at *7 (C.D. Cal. July 11, 2014). Federal Rule 45(d)(3)(A)(iv) provides that a court "must quash" a subpoena that subjects a person to an "undue burden" or "requires disclosure of privileged or other protected matter, if not exception or waiver applies . . . ."

In the case of non-party subpoenas, the balance of factors favors the protection of non-parties. *See, e.g.*, *WPIX Inc. v. Broad. Music, Inc.*, No. CV 11-4052, 2011 U.S. Dist. LEXIS 154908, at *6-8 (C.D. Cal. July 5, 2011) ("Because Fox is a non-party, the Court should take care to account for and mitigate the burden of discovery."); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cit. 1980) ("[T]here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential information.").

B.  **Motions for Protective Order**

The Federal Rules of Civil Procedure provide district courts with broad discretion to limit discovery to prevent its abuse. Rule 26 authorizes the court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery . . . ." Fed. R. Civ. P. 26(c)(1). It is therefore well established that "courts have wide latitude to organize discovery and fashion protective orders as they see fit." *U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368–69 (9th Cir. 1982). Within this latitude provided by Rule 26 is the ability to grant the motion of a non-party for a protective order, as "the second clause gives the Court discretion, for good cause, to permit a 'party or person' to seek a protective order." *Fox Broad. Co. v. Dish Network LLC*, 2015 WL 12765545, at *3 (C.D. Cal. Jan. 12, 2015) (quoting Fed. R. Civ. P. 26(c)(1)) (affirming magistrate judge's decision to grant non-parties' motion for a protective order).

Good cause exists where the moving party has demonstrated that it has a particular need for the order and specific prejudice will result if no protective order is issued. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Factors relevant to the good cause analysis

EAST\158171085.1

include "[w]hether the information being sought is for a legitimate purpose or will violate a privacy interest." *So v. Land Base, LLC*, 2009 WL 2407954, at *2 (C.D. Cal. Aug. 4, 2009).

## ARGUMENT

### A. Transfer of This Motion to The Central District of California, Where the Underlying Action is Pending, is Appropriate.

Federal Rule of Civil Procedure 45(f) permits a court to transfer subpoena-related motions to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Here, AT&T consents to such a transfer. (Fitzsimmons Decl. ¶ 5, Ex. C.) On that basis alone, the Court is authorized to transfer this motion to the California Court.

Moreover, the circumstances warrant such a transfer. Petitioner's motion involves application and analysis of a California statute, and the motion raises issues of relevance with which the California Court is already familiar with and well-positioned to resolve. Indeed, this court has already transferred one discovery motion to the Central District of California upon a finding of exceptional circumstances. (*See Broidy Capital Management, LLC, et al. v. Allaham*, No. 18-mc-00240 (S.D.N.Y. July 5, 2018), ECF No. 19.) In addition, the California Court is considering a motion to stay discovery (*Broidy* Litigation, ECF. Nos. 80, 178), which could impact the Subpoena at issue in this motion and give rise to potentially inconsistent rulings. *See E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SA MC 15-00022-DOC (DFMx), 2015 WL 12746706, at *5 (C.D. Cal. Oct. 23, 2015) (granting transfer to the issuing court due to its "familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'") (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46) (D.D.C. 2014)).

Finally, Respondents will incur no hardship from such a transfer. Respondents are based in the Central District of California and filed the *Broidy* Litigation there, and their counsel has an office and lawyers working on this case within the district. (*See Broidy* Litigation, First Amended Compl., ECF No. 47.) The subscriber account at issue in the Subpoena was obtained in Los Angeles, the bills are sent to a Los Angeles residence, and the phone number at issue bears a Los Angeles area code. (Sabi Decl. ¶ 4.) In fact, other than the fact that Respondents' counsel happens to have an office in New York, the Subpoena appears to have no nexus to this district. Given that AT&T consents to the transfer, Respondents would suffer no resulting hardship, and numerous other considerations warrant a transfer, Petitioner respectfully requests that the Court transfer this motion to the Central District of California.

### B. The Subpoena Should be Quashed because Calif. Public Utilities Code § 2891 Prohibits Disclosure of Subscriber Information.

California Public Utilities Code § 2891(a)(4) states that "[n]o telephone or telegraph corporation shall make available to any other person or corporation, without first obtaining the residential subscriber's consent, in writing," any information regarding the subscriber's personal calling patterns, demographic information, and other subscriber information. Petitioner, the subscriber of the account, acquired the cellular telephone number bearing a Los Angeles, California area code, and AT&T sends the bills for that account to a residential address in Los Angeles, California. (Sabi Decl. ¶ 4.) Nevertheless, the Subpoena seeks production of the very information that AT&T is prohibited from producing under Section 2891—information of the subscriber's personal calling patterns and other subscriber information.

Courts, including the district in which the underlying case is pending, have relied on Section 2891 in declining to authorize disclosure of subscriber information like that at issue here. *See, e.g.*, *Ades v. Omni Hotels Management Corp.*, 2015 WL 13639233, at *1 (C.D. Cal. May

18, 2015) (refusing to order production of subscriber information to plaintiffs without the subscribers' express consent); *Birchmeier v. Caribbean Cruise Line, Inc.*, Case No. 12-cv-4069 (N.D. Ill. Apr. 8, 2015), attached as Ex. D to Fitzsimmons Decl., (denying Plaintiffs information related to 42,000 subscribers for the purposes of class notice efforts). *See also Williams v. East Baton Rough Parish Sheriff's Office*, 2010 WL 1576858 (M.D. La. Apr. 15, 2010) (granting motion to quash that sought disclosure of financial records in violation of state statute).

Nevertheless, Respondents contend that Section 2891 has no bearing on Respondents' federal subpoena for phone records because it is preempted by Federal Rule of Civil Procedure 45, which authorizes the issuance of non-party subpoenas. In support of their position, Respondents rely on a district court opinion from the Northern District of Illinois, which reached its preemption conclusion by ignoring the holdings of these cases. *See Spiegel v. Engagetel*, 2015 WL 8986932 (N.D. Ill. Dec. 16, 2015).

At best, *Spiegel* appears to be a results-driven opinion designed to provide a plaintiff with information that would be helpful in efforts to serve a defendant who had been evading service of process for eight months. Its results-driven conclusion should not be applied here to deprive Petitioner, which is not a party to the *Broidy* litigation, of its rights under Section 2891.

Respondents also contend that Petitioner cannot claim the protection of Section 2891 because it is not a "residential subscriber." The only case cited by Respondents for the proposition that Petitioner does not qualify as a "residential" subscriber is an unpublished state court case that relies on a hearsay statement contained in a legislative committee note for a bill proposed years after the fact. Moreover, the issue before the court was not whether the legislature intended "residential" to mean "noncommercial." Thus, any statement on that issue is mere *dicta* anyway. In any event, the statute was written at a time when cellular telephones were

not widely in use. According to the Legislature, Section 2891 was enacted because "residential telephone . . . customers and subscribers have a right to private communications, [and] the protection of this right to privacy is of paramount state concern . . . ." Cal. Pub. Util. Code § 2891; Historical & Statutory Notes, § 1 of Stats. 1986, c. 821.   Here, Petitioner acquired a cellular phone bearing a Los Angeles, California area code, and AT&T sends the bills for the account to a residential address in Los Angeles, California.  Moreover, Petitioner has permitted the phone number to be used for both business and personal communications.  (Sabi Decl. ¶ 5.) Thus, Petitioner is permitted to claim the protections afforded under Section 2891, and the Court should quash the Subpoena.[1]

### C. The Subpoena Should Be Quashed Because it is Overbroad and Seeks Irrelevant Information in Violation of Movant's Privacy.

In addition, Respondents make no effort to limit the information sought to that which is relevant to the *Broidy* Litigation, rendering it overbroad.  Rule 26(b)(1) only permits the discovery of non-privileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

Respondents could have limited their requests to telephone calls, text messages, and SMS messages to or from those telephone numbers that they believe are connected to the conduct alleged in the *Broidy* Litigation, but they did not.  Instead, Respondents seek logs and records for <u>all</u> calls, text messages, and SMS messages to or from the phone number that is the subject of the Subpoena, seeking to engage in a fishing expedition at the expense of a non-party's privacy.  Such phone records include records of both business and personal communications, in which Respondents have no legitimate interest.  (Sabi Decl. ¶ 5.)

---

[1] During the parties' meet and confer, counsel for Respondents indicated that Respondents were not seeking the content of any communications in the Subpoena.  On that basis, Petitioner withdrew its objection under the Electronic Communications Privacy Act and the Stored Communications Act.

In an effort to resolve the matter without court intervention, Petitioner offered to overlook its CPUC objection, provided Respondents agreed to limit the scope of the records sought to those relevant to the *Broidy* litigation. Petitioner further indicated its willingness to work with Respondents on a protocol that would provide Respondents with the information they need, to the extent it exists, while limiting the unnecessary invasion into Petitioner's private communications. For example, Petitioner suggested that Respondents could provide AT&T with a list of phone numbers it believes are tied to the alleged conduct giving rise to their complaint, and AT&T could produce logs identifying those communications that match the numbers provided. Alternatively, Petitioner suggested that Respondents could provide Petitioner's counsel with the list of phone numbers, and Petitioner's counsel could provide all responsive records, redacting the non-responsive ones. Finally, Petitioner suggested a third alternative: Respondents could provide a narrative describing the communications they believe are relevant, and Petitioner's counsel could review the phone records and produce redacted logs containing information about only those communications that are responsive.

Respondents rejected all of these suggestions. First, Respondents claimed (without any legal authority) that they are "not required to justify to AT&T or [Petitioner] that the requested records are relevant and within the scope of permissible discovery under Federal Rules of Civil Procedure 26 and 45." (Fitzsimmons Decl. ¶ 3, Ex. B.) But Rule 26(b)(1) only authorizes discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . ," and subpoenas are subject to this scope of discovery. *See Atwell v. City of New* York, No. 07 Civ. 2365 (WHP), 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008) ("Rule 45 requests for production are subject to the limits on discovery under Rules 26 and 34."); *United States v. McGraw-Hill Cos.*, No. CV 13-779, 2014 U.S. Dist. LEXIS

59408, at *23 (C.D. Cal. Apr. 15, 2014) (noting that the subpoenaing party has the burden to identify the relevancy of the records they seek).

The rules do not authorize unfettered access to third party records that have no bearing on the claims or defenses at issue in the underlying case. See *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *5 (S.D.N.Y. May 22, 2012) ("As discovery under the Federal Rules is limited in scope to that which is 'relevant to any party's claim or defense,' the court may also quash or modify a subpoena that calls for irrelevant information.") (citations omitted); *Marjoram Supply Co. of Fla. LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018) (noting that courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26); *Raap v. Brier & Thorn*, No. 17-MC-3001, 2017 WL 2462823, at *4 (C.D. Ill. July 7, 2017) (quashing non-party subpoena that sought documents "without any reference to the subject matter of Plaintiff's lawsuit"); *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (affirming magistrate judge's order quashing non-party subpoena because requests were "overbroad"); *Trigeant Ltd. v. Petroleos De Venezuela, S.A.*, No. 08-80584-CIV, 2009 WL 10668731, at *4-5 (S.D. Fla. May 5, 2009) (quashing non-party subpoena in its entirety because it was "overbroad," noting "the generalized nature of the requests" and the subpoena's "facial[] overbr[eadth].").

Second and more importantly, Respondents claim that Petitioner's suggestion of providing a narrative "does not provide a viable path forward" because they do not know what is relevant in the phone logs.[2] Respondents claim that they must either first be given an opportunity to review the records, or alternatively, Petitioner must provide them with informal discovery

---

[2] Plaintiffs have never provided a substantive explanation for why Sport Trinity's other proposals to provide phone numbers are unacceptable.

regarding the user of the phone number and the substance of the communications so that they can identify what is relevant. Respondents even go so far as to claim that if Petitioner does not provide this information and moves to quash based on relevancy, Respondents "will seek a hearing with the court to establish a factual record for the court to determine the relevance of the requested information." (Fitzsimmons Decl. ¶ 3, Ex. B.)

Threats aside, Respondents' argument proves the point: *Respondents do not actually know whether the records contain any relevant information*. This is a textbook example of a fishing expedition. As one court has explained, the mere hope that "there might be something of relevance" is insufficient to justify the fishing expedition Respondents seek to undertake. *Tompkins v. Detroit Met. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012). Indeed, courts have quashed subpoenas that seek telephone communications for which the propounding party has failed to establish relevancy of the communications sought. *Burdette v. Panola Cnty.*, 2015 WL 452489, at *1 (N.D. Miss. Feb. 4, 2015) (finding that subpoena seeking the plaintiff's phone records and text messages was irrelevant where there was no evidence that the records had any bearing on the plaintiff's claims); *Sharp v. Baltimore City Police Dep't*, No. CCB-11-2888, 2013 WL 937903, at *3 (D. Md. Mar. 1, 2013) (where one party "seem[s] engaged in an attempt to uncover 'dirt' on the [other party], rather than truly investigate the facts relevant to . . . [the] incident[,]" the subpoena used in an attempt to dig up the dirt should be suppressed).

The fact that Respondents seek such broad access to Petitioner's communications is particularly troubling when Respondents have served more than 70 subpoenas during the course of a couple of months. (Fitzsimmons Decl. ¶ 3.) Should AT&T produce all of the information sought by Respondents, Petitioner is deeply concerned that Respondents will seek to pursue every unknown phone number contained in the produced records so as to fish for information

-12-

and harass Petitioner and those with whom Petitioner has relationships, all without any legitimate basis for doing so. Petitioner is not a party to the *Broidy* Litigation, and it has privacy rights that cannot be trampled on by Respondents in the pursuit of their claims. *Ademiluyi v. Phillips*, No. 2:14-CV-00507-MMD, 2014 WL 7012493, at *2 (D. Nev. Dec. 12, 2014) (third parties have a "personal interest in securing the privacy of [their] cell phone records").

Petitioner has been reasonable, but the demands by Respondents are too much. The subpoena should be quashed, or in the alternative, the subpoena should be modified to limit the logs to communications relevant to the *Broidy* Litigation.

## II. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court transfer this Motion to the Central District of California. Alternatively, Petitioner requests that the Court quash or, in the alternative, modify the Subpoena and grant the requested protective order. Moreover, Petitioner respectfully requests that the Court grant Petitioner its reasonable attorney's fees and costs as a sanction for Respondents' improper and overbroad subpoena.

Dated: August 1, 2018

By: *s/ Kevin Walsh*
Kevin Walsh
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Telephone: 210.335.4500
Facsimile: 210.335.4501

Angela C. Agrusa (*pro hac vice* to be filed)
Amanda Fitzsimmons (*pro hac vice* to be filed)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: 310.595.3000
Facsimile: 310.595.3300

Attorneys for Petitioner
SPORT TRINITY LLC